**NASH ENGINEERING CO. v. W. D. CASHIN & CO. et al.**

(District Court, D. Massachusetts. January 21, 1925.)

No. 1891.

1. Patents ⬡165—Patent cannot be construed to cover wider field than indicated in specification.

Where a patent describes an invention of a particular kind, without any indication in the specification that it covers a wider field, it cannot be interpreted so as to cover this wider field.

2. Patents ⬡328—Jennings reissue, 15,637, for vacuum heating system, held valid, but not infringed.

The Jennings reissue patent, No. 15,637 (original No. 1,447,854), for a vacuum heating system, is valid, but includes as an essential element a device for exhausting air from the tank, and, as so limited, held not infringed.

In Equity. Suit by the Nash Engineering Company against W. D. Cashin & Co. and the Skidmore Corporation. Decree for defendants.

Southgate & Southgate, of New York City, for plaintiff.

Fish, Richardson & Neave and J. L. Stackpole, all of Boston, Mass., and Lynn A. Williams, of Chicago, Ill., for defendants.

LOWELL, District Judge. This is a bill in equity to restrain the infringement of reissued letters patent No. 15,637, granted June 26, 1923, to L. C. Jennings, and assigned to the plaintiff. The patent relates to a so-called vacuum heating system. Such a system depends for its operation on establishing a partial vacuum in the return lines from the radiators in a steam heating system. Its main features have been well known for some years. They comprise a low-pressure boiler as the source of the steam, pipes connecting the boiler with the radiators, and return pipes to bring back the water resulting from the condensation of steam in the radiators. There is a valve or trap at the outlet end of each radiator, which acts automatically to allow the water to flow back.

In this system the circulation of the steam is brought about, not by pumping it through the pipes, as had been done in the older art of steam heating, where high-pressure boilers were used, but by drawing the steam through them. This is done by creating a partial vacuum in the return lines. Before the invention of the patent in suit the vacuum had been produced by the use of air pumps of various kinds in connection with a receiving tank. There were two well-known ways in which this tank could be used. In the first the returns were led directly to the tank, while in the second they were pumped to the tank by a pump called an air pump, which handled the mixture of air and water of which the returns consisted. The volume of water coming back varies greatly with the temperature. On warm days very little water returns, because the steam is not rapidly condensed. On cold days, however, a good deal of water comes back, and is apt to come intermittently, or, as expressed by some of the witnesses, "in slugs." Air gets into the radiators or pipes by leakage from without, as the system is under a vacuum. The air comes back continuously, and must be discharged from the system, because it would be dangerous to let it get into the boiler. An important feature of a pumping apparatus used in connection with a vacuum heating system is that the air pump shall operate continuously, while the water pump shall operate intermittently. None of the devices in use had been very successful. The patentee devised a system which is completely successful and has been generally adopted. He claims to have revolutionized the vacuum steam-heating art. Making due allowances for an inventor's enthusiasm, this claim is fairly supported by the evidence. There is no question in my mind but that the device used by the patentee has been of great benefit to the public.

The plaintiff's apparatus was built up around the Nash pump, as appears by the statement on page 3, line 38, of the patent in suit, that:

"The hydro-turbine pump is described more in detail in patent 1,091,529, granted March 31, 1914."

The specification of that patent, which was granted to L. C. Nash, refers to the invention as follows:

"My invention relates to improvements in air compressors, vacuum pumps, and similar devices. * * *"

The operation of Nash's device may be described as follows:

"A rotor revolves in an elliptical casing partly filled with water. The water approaches and recedes from the hub, and in this manner acts as a liquid piston, displacing the air in the spaces" (called displacement chambers) "between the vanes of the impeller." Marks' Mechanical Engineers' Handbook (2d Ed.) p. 1608. The inlet and outlet ports are situated near the hub of

the rotor. "As the water recedes from" these displacement chambers, "it draws in air through the inlet ports. When the water is forced back" into the displacement chambers "by the converging casing, the air is first compressed and then discharged through the outlet ports." Plaintiff's Exhibit 5, Nash Engineering Co. Bulletin.

The Nash pump is not an air pump at all, as that expression is commonly used in denoting a pump which will discharge air mixed with water. It is rather a blower, and is so classed by Marks, p. 1608. Water is not discharged by it. Indeed, its very operation is dependent on water being retained within the casing in which the rotor revolves, to act as a liquid piston (or series of pistons) to suck in and expel the air. Water is not necessary for the operation of the device. The plaintiff's expert, Mr. Livermore, stated that mercury might be used as an operating liquid. The so-called displacement chambers of the apparatus correspond to the cylinders of a reciprocating pump, while the water in each chamber corresponds to the piston.

I am doubtful on the evidence, which is meager on this point, whether the Nash apparatus could be so changed as to operate as an air pump to handle air and water; it is certain that it would not work efficiently.

As a blower the Nash device was not effective, because, as explained by Marks, p. 1608, there was loss of power due to skin friction. Jennings conceived the idea that this device might be used, not as a blower, to force air forward, but like a fan, to exhaust it from the tank to which the returns from the system were conducted. This was a brilliant idea, which Jennings ingeniously carried out to a successful conclusion, and produced an apparatus of great practical utility and commercial value.

Jennings describes his invention as follows:

"This invention relates to a wet vacuum pumping apparatus. The object of the invention is to provide an apparatus in which the air and water are separated, and the air exhausted by means of a pump and delivered into the atmosphere; the water being withdrawn by a separate pump and discharged against any desired pressure." Patent, p. 1, line 9.

"Briefly stated, my apparatus comprises a receiver, into which the returns of air and water are discharged; the water collecting in the bottom and the air in the upper portion of the receiver. A pumping unit is provided, which comprises a centrifugal water pump and a hydro-turbine air pump. The latter is connected to exhaust the air and discharge the same where desired. The water pump is connected to the lower portion of the receiver and withdraws the water from the latter and discharges it where desired." Page 1, line 51.

There are 19 claims in the patent, 7 of which were sued on. These are claims 2, 3, 4, 5, 6, 13, and 19.

They are as follows:

"(2) The combination, with the separating chamber of a vacuum steam-heating system, of a rotary gas pump employing water for its pumping action and having a rotor provided with displacement chambers, said pump being connected and operating to exhaust the gas from the system by the suction and displacement action of the water in said chambers, and a water pump connected and operating to withdraw water of condensation from the separating chamber.

"(3) The combination, with the separating chamber of a vacuum steam-heating system, of a rotary gas pump employing water for its pumping action and having a rotor provided with displacement chambers, said pump being connected and operating to exhaust the gas from the system by the suction and displacement action of the water in said chambers, and to retain all the water in the system, and a water pump connected and operating to circulate the water of condensation back to the boiler.

"(4) The combination, with the separating chamber of a vacuum steam-heating system, of a rotary gas pump employing water for its pumping action and having a rotor provided with displacement chambers, said pump being connected and operating to exhaust the gas from the system by the suction and displacement action of the water in said chambers, connections for supplying the gas pump with water for its operation from the system, and a water pump connected and operating to withdraw water of condensation from the chamber.

"(5) The combination, with the separating chamber of a vacuum steam-heating system, of a rotary gas pump connected to the chamber and employing water for its pumping action, and a water pump connected to and operating to withdraw the water of condensation from the separating chamber, the connection between the water pump and the separating chamber being at a higher level than the connection between the gas pump and the separating chamber, whereby the gas pump will contain its op-

erating water and will continue in operation when the water pump has exhausted the water in the separating chamber down to the level of its connection therewith.

"(6) An apparatus for use in connection with the return main or mains of a vacuum steam-heating system, comprising a gas pump for exhausting the gas from the system, a water pump for withdrawing the water of condensation, and connections for relieving the water pump from gas."

"(13) A liquid and gas pumping apparatus, including in combination a receiver for the liquid and gas, a centrifugal pump for withdrawing the liquid from the receiver disposed at a lower elevation than the normal level of water in the receiver, said pump having a liquid pipe connecting its suction chamber with the receiver and a gas pipe affording communication between the top of the suction chamber and the top of the receiver, for the purpose set forth."

"(19) A liquid and gas pumping apparatus, including in combination a receiver for liquid and gas, a pumping unit comprising a liquid pump, and a gas exhausting pump, the gas pump being of the hydro-turbine type and the liquid pump being of the turbine type, said unit being disposed at an elevation below the normal water level in the receiver, a conduit extending from the receiver below said water level to the gas pump to supply make-up water, and a gas pipe providing communication between the top of the suction chamber of the liquid pump and the top of the receiver."

The plaintiff contends that Jennings solved the problem of "designing a pumping apparatus which would maintain a vacuum in the return line and remove the air and gas from the system, and which would return only the water of condensation to the boiler" (Plaintiff's Brief, p. 10), and insists that his invention must be given a scope broad enough to cover the defendant's apparatus, which accomplishes this result, as it consists of a combination of an air pump and a water pump with the receiver.

[1] Many defenses were interposed in this suit, but the only one which needs consideration is the question of infringement.

The present case clearly illustrates the rule of law that, where a patent describes an invention of a particular kind, without any indication in the specification that the invention covers a wider field, it cannot be interpreted so as to cover this wider field, since those skilled in the art would not be apprised by the patent that the apparatus therein described and claimed, or one similar to it, could be so used. State Bank of Chicago v. Hillman's, 180 F. 732, 736, 104 C. C. A. 98; U. S. Light & Heat Corp. v. Safety Car, etc., Co. (C. C. A.) 261 F. 915, 918; Lyon v. Boh (D. C.) 1 F.(2d) 48.

[2] It will be seen, by the extracts from the specification which have been quoted, that the invention relates to a combination with the receiving tank of a vacuum steam-heating system of two pumps so arranged that each shall withdraw its respective fluid from the tank. This is the field covered by the invention. It cannot cover any broader area, because no such area is inclosed within its utmost limits. The reason for this is not far to seek. Jennings built up his apparatus around the vacuum pump or air compressor described in the Nash patent, No. 1,091,529, as he explicitly states.

The Nash patent describes, not an air pump, but a blower; as used by Jennings, it is not an air pump, but an exhaust fan.

It never occurred to Jennings to suggest in his specification that this exhaust fan could be so placed as to receive the returns of air and water directly, because this was contrary to the basic idea of his invention, which was so to arrange his two pumps that one should handle air only, and the other water only. This is proved beyond peradventure by the terms of the original patent, of which the one in suit is a reissue. The original patent contained the following synopsis of the invention (patent No. 1,447,854, p. 4, lines 83–92):

"Although I have described a specific arrangement of the receiver, pumps, and piping, it is very apparent that my invention is not limited to the particular embodiment shown and described, but that the details thereof may be varied within wide limits, *the only requirement being that there shall be a receiver for the returns, a water pump, and an air pump, each separately taking its respective fluid from the receiver.*" (Italics mine.)

This sentence was taken out by the reissue. The defendant cogently contends that, if the patent is more liberally construed on account of the omission of this statement, the reissue patent will thereby transcend the limits of the invention as originally set forth, and become void. This issue, however, need not be met. The patent as it now stands contains not the slightest indication that the invention covers anything more than what was summarized in the de-

leted portion. The only difference in this regard between the original patent and the reissue is that the latter does not now contain this specific restriction. The plaintiff, however, lays stress on a sentence added to the reissue, which constitutes the only other difference between the original patent and this reissue:

"It will thus be seen that the rotary gas or air pump employs water for its pumping action, and that the said pump operates to exhaust the gas from the system by the suction and displacement action of the water in the displacement chambers of the rotor thereof." Patent in suit, p. 3, lines 70 to 76.

This sentence was put in by the patent solicitor in a valiant attempt to broaden the invention. It has no such effect, however; it merely describes more particularly the manner in which the so-called "hydro-turbine air pump" operates.

The defendant does not use an air pump to exhaust the air from the receiver. In his apparatus the air mixed with water is pumped into the receiver, and thence escapes into the atmosphere. Whatever may be the scope of the plaintiff's patent, which need not here be determined, it does not cover the defendant's apparatus. The idea at the base of Jennings' invention was to exhaust the air from the tank; it is limited to an apparatus which will accomplish this function as the essential feature of its operation.

The result of Jennings' invention was to provide an efficient vacuum steam heating system. He cannot, however, claim as his invention any means of accomplishing this result, except one which involves the use of the new combination conceived of by him. Robinson, Patents, § 149; Walker, Patents, 5th Ed., § 340; O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601; Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650; Case v. Brown, 2 Wall. 320, 17 L. Ed. 817; Cammeyer v. Newton, 94 U. S. 225, 24 L. Ed. 72; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Werner v. King, 96 U. S. 218, 24 L. Ed. 613; Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Goodyear Dental Co. v. Davis, 102 U. S. 222, 26 L. Ed. 149; Clark v. Beecher Mfg. Co., 115 U. S. 79, 5 S. Ct. 1190, 29 L. Ed. 352; Yale Lock Co. v. Berkshire Bank, 135 U. S. 342, 10 S. Ct. 884, 34 L. Ed. 168; National Meter Co. v. Yonkers, 149 U. S. 48, 13 S. Ct. 774, 37 L. Ed. 644; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Incandescent Lamp Patent, 159 U. S. 465, 16

3 F.(2d)—44

S. Ct. 75, 40 L. Ed. 221; Minerals Separation v. Butte Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019.

This combination includes as an essential element a device for exhausting air from the tank. The defendant's apparatus does not include such a device. His apparatus is therefore not an infringement upon the plaintiff's invention.

Bill dismissed.