# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# DISTRICT OF COLUMBIA.

---

## FRIED. KRUPP AKTIENGESELLSCHAFT *v.* CROZIER.

---

INJUNCTION; OFFICERS; PATENTS, INFRINGEMENT OF.

A bill in equity by a foreign owner of valid United States patents for field guns and carriages, granted to the assignor of the complainant, will lie to enjoin the Chief of Ordnance of the United States Army from manufacturing, for the use of the United States, guns and carriages in infringement of such patents, where it is not sought to disturb the United States in the possession of guns and carriages already manufactured,—especially where it appears that unless the relief sought is granted the complainant's patents will be valueless in the United States, as they are of use to the government alone.

No. 1877.   Submitted April 20, 1908.   Decided October 7, 1908.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sitting as a court of equity, sustaining a demurrer to and dismissing a bill for an injunction.                                           *Reversed.*

Vol. XXXII.—1.

The COURT in the opinion stated the facts as follows:

This appeal brings into review a decree of the supreme court of the District dismissing appellant's bill of complaint.

Appellant, Fried. Krupp Aktiengesellschaft, a corporation organized under the laws of the German Empire, seeks to enjoin William Crozier, Chief of Ordnance of the United States Army, his agents and employees, from manufacturing field guns and gun carriages in infringement of certain letters patent of the United States regularly issued to Fried. Krupp of Germany, two on March 17, 1903, and one on May 30, 1905, numbered 722,724, 722,725 and 791,347, respectively, which patents were subsequently assigned to appellant, and the assignments duly recorded in the Patent Office of the United States.

It was stipulated below that no pecuniary benefit has accrued to the defendant Crozier by reason of the acts set forth in the bill, and plaintiff waives any claim for accounting or damages. It was further stipulated that the government of the United States, and its ordnance department have manufactured, and intend to continue the manufacture and use, or cause to be manufactured for the use of the government, field guns and carriages made after the models referred to in the bill ("the claim or claims of complainant being in no wise admitted"); and that the defendant Crozier is the officer in the service of the United States who directs and is in charge of such manufacture of said field guns and carriages for the United States.

To the bill as thus amended by stipulation the defendant demurred, the ground of the demurrer being the contention that the suit is in effect against the United States. This appeal followed the decree of the court sustaining the defendant's demurrer.

*Mr. Faneuil D. S. Bethune* and *Mr. Harry G. Kimball* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

That the United States, its officers and agents, have no right, title, or interest in the patents involved in this suit is not denied. That these patents are the exclusive property of appellant is not denied, and, indeed, could not be in view of *James* v. *Campbell,* 104 U. S. 356, 26 L. ed. 786, and *Belknap* v. *Schild,* 161 U. S. 10, 40 L. ed. 599, 16 Sup. Ct. Rep. 443. That the Patent Office of the United States issued these patents in pursuance of law, and therein purported to grant to the patentee, his heirs and assigns, for a stated period, "the exclusive right to make, use, and vend the invention or discovery throughout the United States," is admitted; but it is contended in behalf of appellee that because this inexcusable encroachment upon the rights· of appellant inures to the benefit of the government the courts are powerless to stay the hands of the wrongdoer. If such be the case, one department of the government may, without warrant or authority and in direct violation of the rights of third parties, nullify the lawful acts of another department of the government.

We cannot believe that in the eyes of the law it is any less obnoxious for an officer of the government to appropriate property for the benefit of the government, under the conditions surrounding this case, than it would be to appropriate it for his own personal benefit. Nor do we find anything inconsistent with this proposition in either *Belknap* v. *Schild, supra,* or *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601, 48 L. ed. 1134, 24 Sup. Ct. Rep. 820.

In *Belknap* v. *Schild* it was sought to restrain the Commandant of the United States Navy Yard at Mare Island, California, and certain of his subordinates, from using a caisson gate which had been theretofore installed at that place in violation of plaintiff's patent, and also to have said gate destroyed or delivered to plaintiff. In denying the relief sought the court said: "The caisson gate was a part of the dry dock in a Navy yard of the United States, was constructed and put in place by the United States, and was the property of the United States, and held and used by the United States for the public benefit. If the gate

was made in infringement of the plaintiff's patent, that did not prevent the title in the gate from vesting in the United States. The United States, then, had both the title and the possession of the property.  The United States could not hold or use it, except through officers and agents.  Although this suit was not brought against the United States by name, but against their officers and agents only, nevertheless, so far as the bill prayed for an injunction and for the destruction of the gate in question, the defendants had no individual interest in the controversy; the entire interest adverse to the plaintiff was the interest of the United States in property of which the United States had both the title and the possession; the United States were the only real party, against whom alone in fact the relief was asked, and against whom the decree would effectively operate; the plaintiff sought to control the defendants in their official capacity and in the exercise of their official functions, as representatives and agents of the United States, and thereby to defeat the use by the United States of property owned and used by the United States for the common defense and general welfare; and therefore the United States were an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought; and the suit could not be maintained without violating the principles affirmed in the long series of decisions of this court, above cited."

*International Postal Supply Co.* v. *Bruce* came before the court on a certificate for instruction, from which it appeared that the defendant was postmaster of the United States post-office at Syracuse, New York, and that his subordinates were using two stamp-canceling machines which infringed plaintiff's patent, and which had been hired by the United States Post-office Department for an unexpired term of years.  The court held the case to be governed by *Belknap* v. *Schild,* which, it said, turned on the proposition "that the court could not interfere with an object or property unless it had before it the person entitled to the thing."  The court further said: "In the case at bar the United States is not the owner of the machines, it is true, but it is a lessee in possession, for a term which has not

expired. It has a property, a right *in rem,* in the machines, which, though less extensive than absolute ownership, has the same incident of a right to use them while it lasts. This right cannot be interfered with behind its back, and, as it cannot be made a party, this suit, like that in *Belknap* v. *Schild,* must fail. * * * Whether or not a renewal of the lease could be enjoined is not before us."

It will thus be seen that in the *Belknap* and *Bruce Cases* the subject-matter involved was property of the United States, and that, therefore, the United States was necessarily a party. In the present case it is not sought to disturb the United States in the possession and use of the guns already manufactured. The court is not asked to deal with property of the United States. The plaintiff simply asks that an officer of the United States be restrained from invading rights granted by the government itself. The acts complained of are not only not sanctioned by any law, but are inconsistent with the patent laws of the United States.

That "no man is so high that he is above the law" and beyond the coercive process of the courts has long since been definitely determined. *Osborn* v. *Bank of United States,* 9 Wheat. 738, 6 L. ed. 204; *United States* v. *Lee,* 106 U. S. 196, 27 L. ed. 171, 1 Sup. Ct. Rep. 240; *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 35 L. ed. 363, 11 Sup. Ct. Rep. 699; *Tindal* v. *Wesley,* 167 U. S. 204, 42 L. ed. 137, 17 Sup. Ct. Rep. 770; *American School* v. *McAnnulty,* 187 U. S. 94, 47 L. ed. 90, 23 Sup. Ct. Rep. 33.

We cannot see that this case differs in principle from the case last cited, which was a suit against the United States postmaster in charge of the United States postoffice at Navada, Missouri, to restrain him from carrying out the provisions of a so-called "fraud order" issued by the Postmaster General. It was held that, inasmuch as the Postmaster General in issuing the order exceeded his authority, the plaintiff was entitled to relief. The court said: "The acts of all its [the government's] officers must be justified by some law; and in case an official violates the law to the injury of an individual, the courts generally have jurisdiction to grant relief."

If an officer who in good faith is attempting to execute the command of his superiors, a command issued in supposed obedience of express statute, is subject to the injunctive process of the courts, much more ought an officer to be restrained whose only excuse for violating private rights is that he is acting for the benefit of the government.

Assuming for the purpose of this opinion the truth of the allegation of infringement, it is apparent that, unless the relief sought is granted, plaintiff's patents will be valueless in the United States, since they are of use to the government alone.

It follows that the decree must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                                        *Reversed.*

A petition by the appellee to the Supreme Court of the United States for the writ of certiorari was granted by that court, February 6, 1909.