### COMMISSIONERS OF THE STATE INS. FUND v. UNITED STATES.

### SCANNELL v. SAME.

### OLIVER et al. v. SAME.

### Civ. Nos. 39–310, 40–150, C–41–296.

District Court, S. D. New York.
July 21, 1947.

550

Bernard Katzen, of New York City (Harry Schechter, of New York City, of counsel), for Commissioners of the State Ins. Fund.

Aaron Benenson, of New York City, for Mary Scannell.

Joseph A. Pinto, of New York City, for Betty Lou Oliver and Oscar Lee Oliver.

John F. X. McGohey, U. S. Atty., and Nathan Skolnik, Asst. U. S. Atty., both of New York City, for the defendant.

HOLTZOFF, Associate Justice (sitting by designation).

These are actions against the United States under the Federal Tort Claims Act to recover damages for personal injuries caused by alleged negligence of one of its officers. The defendant interposed the defense that the plaintiffs are not the proper party plaintiffs. The latter move to strike the defense.

On the morning of July 28, 1945, a United States Army bomber operated by an Army officer was flying over New York City and struck the upper portion of the tower of a high office building, known as the Empire State Building, which was owned by Empire State, Inc. This deplorable disaster caused the death of a number of persons and resulted in personal injuries to a number of others. Among the latter were the plaintiffs Mary Scannell and Betty Lou Oliver, who were employed in the building as elevator operators. The injuries were sustained by them in the course of their employment.

Under the Workmen's Compensation law of the State of New York (Consolidated Laws of New York, c. 67), persons employed in certain specified occupations are entitled to compensation for accidental injuries arising out of and in the course of employment (Secs. 2, 3 and 10). The employees involved in this group of actions are within the purview of these provisions. All employers covered by the Act are required to secure the payment of compensation either by insurance or by depositing securities with the State and acting as self-insurers (Secs. 10, 50). Such insurance may, at the option of the employer, be carried either in the State fund established by the State for that purpose, or with an insurance company authorized to transact the business of workmen's compensation insurance (Secs. 50, 76). The State fund is administered by an agency known as the Commissioners of the State Insurance Fund (Sec. 77). Empire State, Inc. maintained insurance with the State Fund.

In due course individual plaintiffs filed claims for compensation under the Workmen's Compensation law. Their claims were allowed. If an injured employee contends that the injuries were caused by the negligence or wrong of a third party, he may, in addition to accepting benefits under the Workmen's Compensation law, also pursue his remedy against the third party by way of an action for damages (Sec. 29). At the time of the accident involved in these actions, the law provided that the action against the third party must be commenced not later than six months after the award of compensation and, in any event, before the expiration of one year from "the date such action accrues". Out of any recovery against the third party, the insurance carrier is reimbursed for the amount of the benefits paid or to be paid to the employee under the Workmen's Compensation law. If the injured employee fails to commence an action against the third party within the prescribed time, his failure to do so operates as an assignment of the cause of action to the insurance carrier. If then the insurance carrier brings the action and succeeds in recovering an amount in excess of the compensation and expenses awarded under the Workmen's Compensation law, the carrier may retain one-third of such excess and must pay two-thirds thereof to the injured employee. Consequently, considerable advantage accrues to the injured employee by bringing the action himself, instead of permitting the insurance carrier to maintain it by way of subrogation.

At the time of the airplane crash on July 28, 1945, no action for negligence could be maintained against the United States as the employer of the pilot, since the United States was not subject to suit in tort. On August 2, 1946, however, the Federal Tort Claims Act became law. By this statute the United States waived its immunity to suit in tort and conferred jurisdiction on the United States District Courts to entertain actions against the United States for damages caused by the negligence or wrongful act of any Government employee acting within the scope of his office or employment under circumstances where the United States if a private person would be liable in accordance with the law of the place where the act or omission occurred. 60 Stat. 843, U.S.C.A. title 28, § 931 et seq. The provisions of the Act were expressly

made retroactive as to all claims accruing on or after January 1, 1945. On January 29, 1947 and March 13, 1947, the New York State Workmen's Compensation law was amended so as to permit an action against a third party to be commenced not later than nine months after the enactment of a law creating, establishing, or affording a new or additional remedy (c. 9 and c. 144 of the Laws of 1947 of the State of New York).

An action for damages said to have been caused by the pilot's negligence was then brought against the United States under the Federal Tort Claims Act by the Commissioners of the State Insurance Fund. This action seeks to recover damages sustained by the two employees. The Commissioners claim to be subrogated to the rights of the employees on the theory that one year after the accident the claims were automatically assigned to the Commissioners by operation of law. The two employees brought suits against the United States in their own behalf, on the assumption that the right of action was vested in them and that no assignment by operation of law had taken place. In order not to be subjected to the risk of a double liability, the United States in each action interposed the defense that the plaintiff is not the proper party plaintiff, i. e., is not the real party in interest. Each plaintiff has made a motion to strike this defense. These motions were argued together. They present the question whether under the circumstances the right to sue the United States under the Federal Tort Claims Act is lodged in the individual plaintiffs, or has devolved on the Commissioners of the State Insurance Fund as the insurance carrier.

The Commissioners contend that under the provisions of Section 29 of the Workmen's Compensation law, the claims were automatically assigned to them by operation of law at the expiration of one year after the accident, which took place July 28, 1945, since during the intervening period no suit had been brought by the claimants against the United States. No such suit, however, could have been maintained by them prior to August 2, 1946, when the Federal Tort Claims Act became law. On the other hand, the individual plaintiffs contend that as a result of the 1947 amendments to the Workmen's Compensation law, they were entitled to bring suit at any time within nine months after the enactment of the Federal Tort Claims Act. Their actions were in fact instituted within this nine months' period. The Commissioners, however, reply that since the Workmen's Compensation law requires an action against the third party to be brought before the expiration of one year from the date the action accrues, the individual suits were instituted too late. Their theory is that the action accrued not on August 2, 1946, when the Federal Tort Claims Act became effective, but on the date of the accident, i. e., July 28, 1945. The ultimate question to be determined is, therefore, whether the right of action against the United States of America accrued on the date of the accident, July 28, 1945, or on the date of the enactment of the Federal Tort Claims Act, August 2, 1946.

It is an elementary principle that the sovereign is immune from suit, except to the extent to which he consents to respond to judicial proceedings. We inherit this principle from the law of England, where it is expressed by the apt aphorism that "The King can do no wrong." The United States succeeded to the rights of the British Crown and is likewise clothed with sovereign immunity from suit. United States v. Clarke, 8 Pet. 436, 444, 8 L.Ed. 1001; The Siren, 7 Wall. 152, 19 L.Ed. 129; United States v. O'Keefe, 11 Wall. 178, 20 L.Ed. 131; Belknap v. Schild, 161 U.S. 10, 17, 16 S.Ct. 443, 40 L.Ed. 599; Eastern Transp. Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472. The Congress alone, with the approval of the President, may waive the sovereign immunity and submit the United States of America to suit in a judicial tribunal. A practice developed of settling and adjusting claims against the Government by legislative action in the form of private Acts. The enactment of such legislation, however, was not a matter of right, but purely a matter of grace on the part of the Congress.

From time to time the Congress waived the immunity of the United States to suit in respect to specified types of claims. The first inroad on this exemption was made in -

the middle of the last century when the United States subjected itself to suit on contract, either express or implied in fact, and on certain statutory liabilities. For the purpose of entertaining such suits the Court of Claims was established. U.S.C.A., Title 28, §§ 241 and 250. The jurisdiction of the Court of Claims was expressly restricted, however, to "cases not sounding in tort". In 1910 the United States submitted itself to suit for infringement of patents. U.S. C.A., Title 35, § 68. In order, however, to preserve the theory that the United States was not subject to suit in tort, such actions against the United States are "for the recovery of compensation for the use or manufacture of a patented invention". Theoretically, they are suits for just compensation for the taking of patent rights by eminent domain. The immunity of the United States against suit in tort still continued unabated. See Belknap v. Schild, 161 U.S. 10, 17, 16 S.Ct. 443, 40 L.Ed. 599. The first departure from this traditional immunity was made in 1920 by the Suits in Admiralty Act, by which the United States subjected itself to suit in the United States District Courts for damages caused by merchant vessels owned or operated by the Government. U.S.C.A. Title 46, § 742 et seq. This jurisdiction was later extended to claims for damages caused by public vessels of the United States. U.S.C.A. Title 46, § 781.

As a result of the legislation just summarized, the United States became subject to suit in contract, as well as for patent infringement and for admiralty and maritime torts. The exemption against suit on common law torts still continued. Necessarily in the course of its activities, numerous claims of this nature arose against the Federal Government. A large percentage of them involved motor vehicles owned and operated by the Government. Heads of executive agencies from time to time were vested by statute with the power to settle and adjust administratively certain types of claims for property damage not exceeding a specified amount. It should be observed, however, that such legislation did not create any legal rights to secure payment of damages, but merely conferred discretionary authority on heads of executive agencies to settle certain limited types of claims for small amounts. Other claims arising out of common law torts were at times disposed of by the Congress by way of private bills. These bills took the form either of an appropriation of a sum of money for the payment of a specified claim, or a waiver of immunity to suit with respect to the claim and the conferring of jurisdiction in respect thereto either on the Court of Claims or on a United States District Court. In each instance, such legislation was enacted as a matter of grace. There was no way to enforce a claim in tort against the United States as a matter of right.

A drastic and far-reaching change took place on August 2, 1946, when the Federal Tort Claims Act became effective, by which the United States submitted to suit in United States District Courts in respect to torts accruing on or after January 1, 1945.[1]

It appears to be the contention of the Commissioners of the State Insurance Fund that, although no suit could have been brought against the United States on the claims involved in these actions prior to the enactment of the Federal Tort Claims Act of August 2, 1946, nevertheless the causes of action accrued on the date of the accident, to wit, July 28, 1945, and that, therefore, because of the limitations of the Workmen's Compensation law the actions

---

[1] This Act provides that suit may be brought against the United States "on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this chapter, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances." Certain types of torts not material to this discussion were excluded from the cognizance of the statute. U.S.C.A., Title 28, § 943.

against the United States, might have been brought by the individual claimants only within one year thereafter. Their contention is further that at the end of the year title to the claims passed by operation of law to the Commissioners. On the other hand, the individual plaintiffs urge that the cause of action against the United States did not exist until August 2, 1946, when the Federal Tort Claims Act became effective; that, therefore, their rights never passed to the Commissioners; and that their actions were timely brought, having been instituted within the nine months' period after August 2, 1946.

 To analyze further the argument of the Commissioners their contention would seem to be that a substantive right of action against the United States existed although it was unenforceable because of the sovereign immunity. The books are replete with discussions of the difference between the concept of a cause of action and the remedy by which it can be enforced. In the light of the voluminous literature on this subject, any extensive consideration of this somewhat theoretical topic would be hardly appropriate. Suffice it to say that to contend that a substantive right of action exists against a person who is immune from suit and against whom no judicial remedy can be pursued, is not realistic. A substantive right for which the law affords no means of vindication or redress would be useless and worthless. Such a nebulous right would be but a phantom. In my opinion the immunity of the United States from suit necessarily implies that no substantive right of action existed against it, and not that there was merely a procedural impediment against its enforcement.

 In interpreting a New York statute, this court is bound by the canons of statutory construction applied by the New York courts. In Cary v. Koerner, 200 N. Y. 253, 259, 93 N.E. 979, 981, the Court of Appeals of the State of New York enunciated the following principle which governs the question at issue in the instant cases: "Where the right to maintain an action is conferred upon an individual or class of persons by statute it is impossible that the cause of action shall be deemed to have accrued in favor of such individual or class at any period prior to the date when the statute took effect." In Reed Co., Inc. v. International Container Corp., D.C., 43 F. Supp. 644, Judge Coxe citing Cary v. Koerner, supra, stated that under the New York law a cause of action accrued when the plaintiff first became entitled to maintain the action.

 The pertinent Federal rule of statutory construction is the same. Thus, in Collier v. Goessling, 160 F. 604, 611, Judge Lurton, writing for the Circuit Court of Appeals for the Sixth Circuit, stated: "To start the running of a statute of limitation there must be some one capable of suing, some one subject to be sued, and a tribunal open for such suits."

 The conclusion seems inescapable that in these cases the right of action against the United States accrued on August 2, 1946, rather than on July 28, 1945. Consequently, the actions in behalf of the individual plaintiffs were brought well within the period of one year from the date of accrual of the right of action, as well as within the period of nine months after the enactment of the law creating the new remedy. By the same token, it cannot be successfully urged that the right of action passed to the Commissioners upon the expiration of one year after the accident of July 28, 1945. If no cause of action against the United States accrued until August 2, 1946, obviously, it could not have passed to the Commissioners of the State Insurance Fund prior to that time.

 Any other interpretation of the New York statute would render nugatory the 1947 amendments. The Commissioners admit that the acceptance of their contentions would lead to this unfortunate result, and that the intention of the Legislature would be frustrated if their reasoning is adopted. The basis of their argument is that the phraseology of the amendatory Acts necessitates such a result. As indicated by the foregoing discussion, however, this line of reasoning appears unsound. Moreover, even if there was any ambiguity or doubt, the Court should endeavor to give effect to the intent of the Legislature, rather than to frustrate its purpose and in-

terpret the recent amendments as having no effect whatever.

It appears from a bulletin issued by the New York State Industrial Commission that one of the purposes of the 1947 amendments to the New York State Workmen's Compensaion law was to enable the employees of the Empire State, Inc., injured in the unfortunate disaster, to bring suit against the United States under the Federal Tort Claims Act. These amendments should be construed as being retroactive, Hession v. Sari Corp., 283 N.Y. 262, 28 N.E.2d 712. It would seem unreasonable to adopt a highly technical construction of the statute and thereby defeat its worthy objective.

In the opinion of the Court, the cause of action of the individual plaintiffs against the United States of America accrued on August 2, 1946 and, therefore, the individual actions were timely brought. The individual plaintiffs must be deemed to be proper party plaintiffs. On the other hand, the Commissioners of the State Insurance fund never acquired title to these causes of action and may not maintain their suit.

The motion of the Commissioners of the State Insurance Fund to strike the defenses that they are not the proper party plaintiffs is denied. The motions of the individual plaintiffs to strike similar defenses are granted.