## SOUTHWESTERN BELL TELEPHONE CO. v. STATE ex rel. FREELING, Atty. Gen.

No. 10480.—Opinion Filed March 25, 1919

Rehearing Denied June 3, 1919.

(Syllabus by the Court.)

1. **Telegraphs and Telephones—Rates—Injunction—Agents of Postmaster General.**

An injunction against the collection of telephone rates prescribed by the Postmaster General and payable to him for services rendered by a telephone system, in his possession and under his control, and used for the public benefit and welfare as an instrumentality of war under congressional resolution (July 16, 1918, c. 154, 40 Stat. 904 [U. S. Comp. St. 1918, sec. 3115 3-4x, appendix]), and proclamation of the President of the United States (July 22, 1918), cannot be granted in an action against the agents of the Postmaster General, carrying out his orders in the operation of such system, as they have no individual interest in the controversy, but the relief is in fact asked against the Postmaster General.

2. **Same—Postmaster General as Necessary Party.**

In an action for injunction, where the effect of the decree would be to control the action of the Postmaster General in the operation of a telephone system, in his possession and operated as a governmental agency for the public benefit and welfare in time of war, the Postmaster General is an indispensable party, his agents through whom he directs the operation having no individual interest and being without authority to grant the relief asked for.

Hardy, C. J., and Harrison, J., dissenting.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action for injunction by State of Oklahoma, on relation of S. P. Freeling, Attorney General, against the Southwestern Bell Telephone Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed, with directions to dissolve the injunction.

S. H. Harris, J. R. Spielman, and J. I. Howard, for plaintiff in error.

John A. Fain, U. S. Atty. for the United States.

S. P. Freeling, Atty. Gen., W. R. Bleakmore, Asst. Atty. Gen., and Paul A. Walker, for defendant in error.

OWEN, J. This action was brought by the Attorney General in the district court of Oklahoma county, for an injunction to restrain the Southwestern Bell Telephone Company, a corporation, and its managing offi-

cers, Pottingill, Nims, Reed, Noble, and Westervelt, from charging or collecting from the people of Oklahoma, for service in the use of the telephone lines of the corporation within the state, any sum or amount in excess of that prescribed and established by the Corporation Commission of the state as set forth in the schedule of rates and charges in its order of February 1, 1918. A temporary injunction was issued, and the Telephone Company appeals to this court.

The Attorney General alleged that the telephone company and the other defendants, officers, and employes of the corporation conformed in all respects to the regulations of the Corporation Commission as to rates established prior to the 21st day of January, 1919; that since that date the employes and officers of the telephone company, in subservience to an order made by the Postmaster General of the United States, have been charging rates for all telephone service other and in excess of the rates fixed by the Corporation Commission. It is alleged that the President of the United States, on July 22, 1918, assumed possession and control of the telephone system of the defendant company, through Postmaster General Burleson, by virtue of a joint resolution of Congress (July 16, 1918, c. 154, 40 Stat. 904 [U. S. Comp. St. 1918, sec. 3115 3-4 x, appendix]), and ever since said time the defendants claim to have been operating the business and telephone system of the defendant company under the supervision and control of the Postmaster General. It is alleged that the Postmaster General is purporting to act in pursuance of the proclamation of the President made in virtue of the joint resolution of Congress, and, acting as such, has made and promulgated a certain order or bulletin, fixing rates and charges for toll service in the transmission of messages over the telephone system of defendant company between persons and places within the state different from the rates prescribed and established by the Corporation Commission. It is alleged that the defendants, assuming to act as the agents of the Postmaster General and under his direction, will continue to exact these rates for whatever service they render to the citizens of the state unless enjoined from so doing. It is also alleged that all revenues of the telephone company are in the possession and are daily being taken into the possession of the Postmaster General, and such revenues collected from the people of the state are not liable to seizure upon execution, and to seize or restrain any of the property of the defendant company would operate to interfere with the transmission of communications of the national government, and would therefore constitute the use of force beyond the power of the state, and would be an interference with a governmental agency.

The prayer is that the defendants be enjoined from charging or collecting any sum greater or in excess of the amount prescribed by the order and regulation of the Corporation Commission.

The defendants by way of special plea to the jurisdiction of the court pleaded the joint resolution of Congress by the terms of which the President was authorized to take possession and assume control of the telephone system, and to operate the same in such manner as might to him appear to be needful or desirable for the duration of the war; the proclamation of the President taking possession, assuming control and supervision, and directing that such supervision, possession, control, and operation should be exercised by and through the Postmaster General, and that such duties imposed upon the Postmaster General should be exercised through the owners, managers, board of directors, officers, and employes of the telephone system until otherwise ordered, not beyond the date of the proclamation of the President of the exchange of ratifications of the treaty of peace; that pursuant to the authority vested in the President and Postmaster General, the Postmaster General selected and created an operating board charged with the detail work of carrying out orders of the Postmaster General, and since the taking over of the telephone system, the Postmaster General, or his agents or board of control, has in every respect assumed and exercised full control and supervision over the defendant company and its property, employes, rates, and operating methods, and the defendant corporation, its employes and codefendants, is in no manner conducting said telephone business or controlling the persons engaged in connection therewith, and has no power or supervision over said business, for the reason that said business is in every sense and respect in the possession and under the control of and being operated by the Postmaster General; that the defendant company and its codefendants have no power or authority to obey in connection with the management orders or directions of the Corporation Commission, or any power or authority other than that of the government of the United States through the Postmaster General; that the government of the United States, or the Postmaster General, is the proper party against whom any suit or proceeding may be maintained affecting, controlling, or limiting the power and authority of the Postmaster General in the manage-

ment, operation, and control of the defendant telephone company.

The general rule in actions of equitable cognizance is that all persons materially interested, either legally or beneficially, in the subject-matter of the suit must be made parties, either as plaintiffs or defendants, so that a complete decree may be made, binding upon all parties. The court cannot properly adjudicate matters involved in a suit where it appears that necessary and indispensable parties to the proceedings are not before the court. 16 Cyc. p. 181; Fla. L. R. & P. Co. v. Anderson, 50 Fla. 501, 39 South. 392; Stories' Eq. Pl., sec. 271.

The Attorney General argues the joint resolution of Congress does not give the President the right to fix rates, and therefore it is not necessary to make the Postmaster General a party, because he is exceeding his authority, and that the defendants should not be treated as agents and employes of the United States government, but as individuals who are threatening to perpetuate an unlawful act outside of their official functions.

It appears the money collected from the people is under the control of and daily paid to the Postmaster General, the telephone company to receive a specified sum from the government for the use of its property. The effect of the injunction asked for, if binding upon the Postmaster General, would be to interfere with a governmental agency during the prosecution of war. So far as this case is concerned, under the terms of the joint resolution pleaded by the Attorney General, the duration of the war will be until the proclamation by the President of the exchange of ratifications of the treaty of peace. If the injunction would have no effect upon the Postmaster General, then it would be a useless act to enjoin the persons named as defendants, for the reason that the Postmaster General might install other employes in their places and continue in force the rates sought to be enjoined.

This identical question was presented to the Supreme Court of Louisiana recently in the case of Railroad Commission and Attorney General of La. v. Cumberland T. & T. Co. and Albert L. Burleson, Postmaster General, and it was there held that the authority of the President to take possession and assume control of the telephone companies for national security or defense, and to operate same in such manner as may be needful or desirable for the duration of the war, clearly includes the power to fix and collect rates. But in view of the conclusion we have reached we deem it unnecessary to determine the question whether the President, acting through the Postmaster General, exceeded his authority in promulgating the rates complained of. Under the congressional resolution he was given the right to take possession when he deemed it necessary and expedient to do so, and to control the telephone system, including all of its property and appurtenances, in such manner as he might deem needful and desirable for the public defense and welfare for the duration of the war. It is alleged the President took possession of the entire property, and that the revenues of the telephone company are in the possession and under the control of the Postmaster General, and unless the defendants are restrained they will continue, under the directions of the Postmaster General, and assuming to act as his agents, to pay the revenues to the Postmaster General. Thus it clearly appears the defendants have no personal interest in the rates collected, and are without power or authority to grant the relief prayed for.

The collection of the money, the entire subject-matter of the action, is directed and controlled by the President under the terms of a war measure, for the public defense, and when received is the property of the United States. The defendants cannot be considered as acting merely as the agents of the telephone company, or in their capacity as individuals, but solely as the agents of the President of the United States, under the Postmaster General, in his possession and control of the entire system, which includes all the property and revenues of the telephone company. Whatever is done by these agents in connection with their management and operation of the telephone lines is done by the President, through them in their capacity as agents. Therefore the injunction seeking to restrain the management and operation of the telephone system is in effect a suit against, and the purpose of which is to control the Postmaster General, and he is a necessary and indispensable party.

In the case of Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599, it was held that an injunction against the infringement of a patent by the use of a gate which was a part of a dry dock in the navy yards, put in place by, and the property of, the United States, and used for public benefit, would not lie to restrain the officers and agents of the government of the United States, as they had no individual interest in the controversy, and that the United States was a necessary party to the action. It was there held that an injunction cannot be issued against officers to restrain or control their use of property already in the posses-

sion of the government, and although the suit was not brought against the United States by name, but against its officers and agents only, nevertheless, so far as the bill prayed for an injunction and for the destruction of the gate in question, the defendants had no individual interest in the controversy; the entire interest adverse to the plaintiff was the interest of the United States in the property of which the United States had both the title and possession. Therefore the United States was the real party, against which in effect relief was asked, and against which the decree would effectively operate. It was said the plaintiffs sought to control the defendants in their official capacity, and in the exercise of their official functions, as representatives and agents of the United States, and thereby defeat the use by the United States of the property owned and used by it, for the common defense and general welfare, and the United States was an indispensable party to enable the court to grant the relief sought.

In the case of Cunningham v. Macon & B. R. Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992, the action was brought by bill in equity to foreclose a second mortgage on the railroad and to set aside a sale and conveyance of the road to the state of Georgia under foreclosure of the first mortgage. It was held the state of Georgia was an indispensable party, for the reason that it was the only party having a personal interest in the matter or any authority to grant the relief asked.

The Attorney General relies upon the case of American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90, and similar cases in which the Supreme Court of the United States held that in cases where the government is neither formally, nor in effect, a party, its officers, although acting by its orders and for its benefit, may be restrained by injunction from doing positive acts for which they are personally and individually liable, taking or injuring the plaintiff's property, contrary to plain official duty and requiring no exercise of discretion. These cases, in our opinion, have no application to the facts pleaded in the instant case. Taking possession of the telephone system, its manner of operation and control, under the terms of the congressional resolution, is left to the discretion of the President, and in an unbroken line of decisions the Supreme Court of the United States has held that no injunction can be issued against the officers of the government to restrain or control the use of property

already in the possession of the government and being used for the common defense and general welfare, as was said in the case of Belknap v. Schild, supra, or where the effect of the injunction is to control the discretion of the officers. Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 23 Sup. Ct. 698, 47 L. Ed. 1074. In that case it was held that whether the official decided right or wrong is not the question presented to the court; but, having jurisdiction to decide at all, it was his duty to decide as he thought the law was, and the court had no power whatever, under those circumstances, to review or control his determination by injunction. The opinion, delivered by Mr. Justice Peckham, reviews the McAnnulty Case, relied upon by the Attorney General, and construes it to be authority only to the extent of holding that the Postmaster General might be compelled by mandamus to deliver mail matter containing money and checks to the person to whom it was addressed, property of which the government had the possession for the sole purpose of delivering it to the owner, and in which the government claimed no title, clearly a ministerial duty, under the general laws and in time of peace, not property of which the government had possession, and using for the public defense and welfare, as an instrumentality of war, under a war measure and in time of war, and in the use of which the government officials must exercise discretion.

The congressional resolution under consideration in this case was enacted as a war measure, giving to the President the power to take possession of the entire telephone system, including all property and appurtenances, whenever he deemed such action necessary and expedient, and to operate such system in such manner as he deemed necessary and desirable, for national security and defense. The petition alleges that he did take possession, and is now, through the Postmaster General, operating the entire telephone system. A decree restraining his agents from carrying out orders in the manner of operation would be, in effect, to interfere with his operation and control, and for that reason the Postmaster General, through whom the President is in actual possession, is a necessary and indispensable party to the action.

Therefore the judgment of the lower court is reversed, with directions to dissolve the injunction.

All the Justices concur, except HARDY, C. J., and HARRISON, J., dissenting.