1998 OK CIV APP 51

**LIBERTY BANK & TRUST COMPANY OF OKLAHOMA CITY, N.A., and Retail Buildings, Inc., an Oklahoma corporation, Plaintiff/Appellees,**

v.

**PERIMETER CENTER LIMITED PARTNERSHIP and 4100 Perimeter Limited Partnership, Defendant/Appellants.**

No. 90472.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 24, 1998.

Eric J. Groves, Oklahoma City, for Defendants/Appellants.

Robert N. Sheets, Charles C. Green, Oklahoma City, for Plaintiff/Appellees.

1. Oklahoma City Ordinance 16,272.

2. Oklahoma City Ordinance 16,277.

3. Oklahoma City zoning restrictions are cumulative in nature. Consequently less intrusive uses for property are permitted up to the City's level of zoning. For example, in the instant case,

*OPINION*

HANSEN, Judge:

¶1 In 1981, Sweetser Company ("Sweetser") began development of Perimeter Center office park, with Appellee Liberty Bank & Trust Company ("Liberty") acting as the lender on the project. Sweetser sought, and on June 30, 1981, the Oklahoma City Council approved a Planned Unit Development for Perimeter Center ("PUD 5"),[1] along with a companion item[2] rezoning the interior tracts of Perimeter Center from R–1,[3] residential use, to O–2, office use. The result left most of the development zoned for office use with the remainder as C–3, commercial use, not requiring rezoning for office park use. The legal description eventually published for PUD 5 by the City was the legal description of the rezoned interior tracts found in the companion item.

¶2 On December 30, 1981, Sweetser filed a Declaration of Covenants and Restrictions for Perimeter Center ("Declaration"), with a list of improvements to the property including a brick wall around the southern edge of the development. Pursuant to the Declaration and for sight restrictions imposed by the City, the brick wall was built around the southern and eastern edge of the property.

¶3 By 1990, successors in interest of Perimeter Center, Perimeter Associates, Ltd. and 39th Associates Limited Partnership, ran into financial difficulties, and entered into a settlement agreement with Liberty to forgive the outstanding debt in exchange for some of the Perimeter Center development tracts. Two of the tracts ("Two and Three") were not mentioned in the City's legal description of PUD 5, were zoned C–3, and were surrounded by the brick wall.

¶4 Liberty sought and found a prospective buyer. On June 20, 1995, an attorney on behalf of an unknown restaurant developer requested an interpretation from City staff on whether a restaurant would be permitted

zoning of C, or commercial zoning, allows use of the property to build an office, O zoning, or a residence, R zoning, as offices and residences are considered less intrusive uses. However, O zoning would not allow the building of a restaurant, because a restaurant is considered a more intrusive use which requires C zoning.

on the property, allowed by virtue of C–3 zoning, or would be limited to offices under the restrictions of PUD 5. City staff's response was that the property, pursuant to PUD 5, was limited to office use, thus commercial development was not allowed. A similar request was sent by Sooner Investment Group ("Sooner") June 17, 1996, along with a question on their right to remove the surrounding brick wall. Again, City staff indicated that development was restricted to office use, as PUD 5 represented overlay zoning of the C–3 property, and added that City would not allow removal of the brick wall or driveway access to the accompanying street. Sooner appealed this interpretation to the Oklahoma City Board of Adjustment ("Board"), and August 1, 1996, the Board upheld City staff's interpretation. Sooner did not further appeal.

¶ 5 Later, another interested developer, Retail Buildings, Inc. ("Retail"), applied for a building permit for a restaurant on the same site as Sooner. On August 4, 1997, the application was granted. Liberty and Retail then filed this declaratory action against Appellants asking for:

[A] declaration that PUD 5 as filed with the City of Oklahoma City does not encumber tracts Two and Three. Furthermore, a declaration that the brick wall in question located upon the property of the Plaintiffs does not constitute an improvement under the Declarations as filed in Oklahoma County and, Therefore, there is no legal impediment to the owners of tracts Two and Three from removing the brick wall in question located on their property.

Appellants responded with counterclaims.

¶ 6 On September 4, 1997, while the above action was pending, Appellant 4100 Perimeter Limited Partnership appealed the grant of the building permit to the Board. At the resulting October 16, 1997 meeting, Board reversed the grant of the building permit, specifically finding failure to include the Perimeter Center Development properties in the PUD 5 description was a scrivener's error, and that PUD 5 applied to the property. No record of appeal of this action appears in the record.

¶ 7 On October 21, 1997, Liberty moved for summary judgment. Appellants responded with the history of this matter. After a hearing on November 21, 1997, the trial court granted Liberty summary judgment, finding the brick wall was not an improvement under the Declarations of Covenants and Restrictions of Perimeter Center, and found there was no restriction as to the use of lots of the Plaintiffs for commercial development within the bounds of C–3 zoning. Later, the trial court denied Appellants' counterclaims. From this decision Appellants now appeal.

¶ 8 Among the issues Appellants raise on appeal is the failure of the trial court to join the City as a party, as reflected and requested in their Answer to the Plaintiffs' Petition and argued in their Response to Plaintiffs' Motion for Summary Judgment. In this context, as above, Liberty and Retail's Petition specifically requests as relief:

[A] declaration that PUD 5 as filed with the City of Oklahoma City does not encumber Tracts Two and Three. Furthermore, a declaration that the brick wall in question located upon the property of the Plaintiffs does not constitute an improvement under the Declarations as filed in Oklahoma County and, Therefore, there is no legal impediment to the owners of tracts Two and Three from removing the brick wall in question located on their property.

Thus, in substance, Appellees requested that neither the PUD 5 nor the Declarations act as a legal impediment to their development of tracts Two and Three. However, Appellees chose to pursue this action without naming the City as a party to the suit.

¶ 9 The purpose of a planned unit development ("PUD") as well stated by Oklahoma City Municipal ordinance 16,407, is to provide the developer the "opportunity for higher densities, greater design flexibility, mixed land uses, and improved marketability." Consequently, the process for a PUD is described as "negotiation between the City government and the applicant to achieve the intents and purposes of these [PUD] regulations and the Comprehensive Plan." Thus, as outlined under 11 O.S.1991 § 43–110, it has been left to the municipal governing body to establish planned unit development

requirements and procedures in a zoning ordinance, and the review and approval of a planned unit development is made by either the planning commission or the governing body.

¶ 10    Under 12 O.S.1991 § 2019, a person who is subject to service of process shall be joined as a party in the action if:

1. In his absence complete relief cannot be accorded among those already parties; or

2. He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

   a. as a practical matter, impair or impede his ability to protect that interest, or

   b. leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. A party will be considered indispensable under 12 O.S. 1991 § 2019 where:

[I]n equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

1.    To what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;

2.    The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

3.    Whether a judgment rendered in the person's absence will be adequate; and

4.    Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Liberty and Retail requested the trial court remove the legal impediment of PUD 5 and the Declarations to their development of tracts Two and Three. As reflected above, this action clearly is intertwined with a review of the City's municipal action as the implementing body of the planned unit development. Further, this matter has resulted in a trial court conclusion affecting the right of the City to enforce an action of the Board of Adjustment opposite the court's decision, and outside the appellate process established by statute. *See,* 11 O.S.1991 § 44–110; *Southwestern Bell Telephone Co. v. State,* 75 Okla. 42, 181 P. 487 (1919). Absent the City, complete relief cannot be afforded the parties in this matter, and the likelihood of inconsistency and prejudice to the parties and the City is substantial. Thus, the Board of Adjustment's ruling lies as such an impediment to the conclusion of the trial court and the resolution of this matter that the City is an indispensable party to this action.

¶ 11    As an indispensable party, the City requires a full and fair opportunity to address the issues raised by the parties in the context of this action. Accordingly we reverse the grant of summary judgment and remand the matter back to the trial court to allow joinder of the City of Oklahoma City as an indispensable party to this action.[4] In light of this disposition, the remaining issues presented by Appellants need not be addressed.

REVERSED AND REMANDED.

ADAMS, J., and BUETTNER, P.J., concur.

---

4.    As the City's interests in this matter bear on the resulting decisions from the Board of Adjustment, this opinion does not address whether the present action represents an impermissible collateral attack on the Board of Adjustment's decision to allow the City the full and fair opportunity to be heard on this issue.